1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                     CENTRAL DISTRICT OF CALIFORNIA

10   PINTIN SPAULDING,                  )   No. ED CV 04-1055-PJW
                                        )
11                  Plaintiff,          )
                                        )
12            v.                        )   MEMORANDUM OPINION AND ORDER
                                        )
13   JO ANNE B. BARNHART, Commissioner )
     of the Social Security            )
14   Administration,                    )
                                        )
15                  Defendant.          )
     _____)
16

17                               I.

18                          INTRODUCTION

19        Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and

20   1383(c)(3), seeking reversal of the decision by Defendant Social

21   Security Administration ("Agency") denying Supplemental Security

22   Income ("SSI").  Alternatively, she asks the Court to remand the case

23   to the Agency for further proceedings.  For the reasons discussed

24   below, the decision of the Agency is AFFIRMED, and this action is

25   DISMISSED WITH PREJUDICE.

26

27

28

                                   1

II.

BACKGROUND

Plaintiff was born on January 19, 1960, and was 44 years-old at the time of the relevant administrative hearing.  (AR 60, 343, 435.) She has a high school education, three years of college for her nursing certification, and past relevant work experience as a nurse's assistant.  (AR 100, 377.)

Plaintiff filed her first application for SSI on February 16, 1999, alleging that she had become disabled on October 9, 1998, because of depression, low back pain, abdominal pain, and nausea.  (AR 324, 392, 432-34.)  She timely requested a hearing before an administrative law judge ("ALJ") after her first application was denied.  (*See* AR 392-97, 407.)  When the smoke finally cleared, Plaintiff had been given not one hearing, but *three*--and was denied benefits after each.

The first hearing was held before ALJ Charles E. Stevenson on March 7, 2000.  (*See* AR 373.)  On March 29, 2000, ALJ Stevenson determined that--although Plaintiff could not return to her former position as a nurse's assistant--she could perform other jobs existing in significant numbers in the national economy, and on that basis found her not disabled at step five of the sequential process.  (*See* AR 373-79.)  The Appeals Council denied review on June 8, 2001, and Plaintiff filed her first complaint in this Court.  (*See* AR 413-14.) On November 27, 2001, the parties stipulated to a remand pursuant to sentence six of 42 U.S.C. § 405(g).[1]  (*See* AR 418-19.)

---

[1]   Remand was necessary because the tape-recording of the first hearing was lost.  (*See* AR 345.)  Consequently, the Administrative Record does not contain the transcript of the first hearing.

1    To complicate matters, Plaintiff filed a second application for

2  SSI on May 16, 2000, *i.e.*, during the pendency of the proceedings on

3  her first application. (*See* AR 79-82, 417.)  The Agency denied that

4  second application initially and on reconsideration. (*See* AR 62-75.)

5  Plaintiff again requested a hearing, which was held before ALJ Helen

6  E. Hesse on April 8, 2002. (*See* AR 29-59, 76).  On May 16, 2002, ALJ

7  Hesse agreed with ALJ Stevenson's conclusion that, although Plaintiff

8  could not return to her former work, she was not entitled to SSI

9  because she could perform any number of light-exertion jobs existing

10 in significant numbers in the national and local economies. (*See* AR

11 12-19.)  Plaintiff sought review of that second decision; once more,

12 the Appeals Council denied review. (*See* AR 4-6.)  Plaintiff then

13 commenced another civil action in this Court; as they had previously

14 done, the parties stipulated to a remand--this time under sentence

15 four of 42 U.S.C. § 405(g). (*See* AR 636-38.)  Pursuant to that order,

16 the Appeals Counsel remanded this matter to ALJ Hesse on September 8,

17 2003. (AR 640-42.)

18    On remand, ALJ Hesse consolidated the two SSI applications (*see*

19 AR 345) and held a third hearing on February 24, 2004.[2] (*See* AR 343-

20 67.)  Plaintiff appeared with counsel and testified. (*See* AR 347-58,

21 361-66.)  The ALJ also heard testimony from Alan L. Ey, a vocational

22 expert. (*See* AR 358-61.)

23    Plaintiff testified that she emigrated from Malachi, Malaysia to

24 the United States in 1982, but is not yet an American citizen. (AR

25

26    [2] Because the transcript of the first hearing was lost, (*see* AR
   345), and because Plaintiff's claims in the operative Complaint do not
27 rely upon the testimony adduced at the second hearing, the Court will
   summarize the third hearing, with citations to the second hearing only
28 as necessary.

347-48; *see also* AR 33.)  She stated that she is a divorced mother of five, and that all five of her children still lived at home with her. (AR 347-48.)  She added that, ever since she stopped working after injuring herself at work in 1998, her income has consisted of a combination of child-support payments, food stamps, and Medi-Cal. (*See* AR 350-51; *see also* AR 35.)

Plaintiff testified that she is unable to work because of pain in her ribs, muscles, and back.  (*See* AR 352.)  Because of her back pain, Plaintiff claimed to have difficulty bending and added that, although she had back surgery in 2003, she still experiences back pain.  (*See* AR 352, 361-63.)  She also complained of muscle pain and twitching in her hands.  (*See* AR 361-62.)  Plaintiff added that she suffers from stomach pain, as well as migraine headaches two or three times a week. (AR 361-62.)  More generally, Plaintiff stated that she has shortness of breath, fatigue, depression, and difficulty concentrating.  (AR 363.)

Regarding her activities, Plaintiff testified that she undergoes physical therapy for her back three times per week and endures 90-minute sessions with a psychiatrist once monthly.  (*See* AR 364, 366.) Additionally, Plaintiff is active in her church and sometimes watches her children play soccer at the park.  (*See* AR 351-54.)  She explained that, although she folds clothes and helps her children do "the little things" around the house, she had been unable to do laundry, wash dishes, or make the bed for the past five or six years.  (AR 352-53.) She also testified that she plays with her cats and supervises her children while they do their chores.  (*See* AR 355.)  Plaintiff added

4

that she accompanies her children to the store approximately once per week.  (AR 357-58.)  The remainder of the time, Plaintiff stated that she "[j]ust sit[s] outside."  (*See* AR 354-55.)

Next, the ALJ took testimony from Alan Ey, the vocational expert. (*See* AR 358.)  The ALJ posed the following hypothetical question to this expert:

> [A]ssume a 44 year-old individual with a graduate
> equivalency diploma and work experience as [. . .] reported
> in testimony today.  This individual could sit six hours out
> of [an] eight hour day.  Stand or walk six hours out of an
> eight hour day with normal workday breaks.  Occasionally
> lift 20 pounds, frequently lift 10 pounds.  She's precluded
> from climbing ladders, ropes, and scaffolding, working at
> unprotected heights, around dangerous fast-moving machinery,
> or driving automatic equipment on the job.  She's also
> limited to moderately complex tasks with little or no
> contact with the public.

(AR 359.)  The expert testified that this hypothetical person could not resume Plaintiff's former work as a nurse's assistant, and opined that the skill-set associated with Plaintiff's prior work would not be transferrable to other jobs.  (*See* AR 359-60.)  Mr. Ey further opined, however, that this hypothetical person could perform a number of jobs at the light-level of exertion--including that of motel housekeeper, assembler of electrical accessories, and assembler of small products-- even assuming that restrictions against hyper-vigilant, high production-quota work were included in the hypothetical.  (AR 360-61.)

1   Counsel had no questions for the expert, and the ALJ adjourned the

2   hearing, leaving the record open for Plaintiff to submit her most

3   recent medical records.  (*See* AR 366-67.)

4       On May 24, 2004, the ALJ issued her decision analyzing

5   Plaintiff's claims under the Agency's five-step sequential evaluation

6   process.  (*See* AR 324-33.)  At step one, the ALJ concluded that there

7   was no evidence that Plaintiff engaged in substantial gainful

8   employment since September 16, 1998.  (AR 332.)  Accordingly, the ALJ

9   proceeded to step two.

10       At step two, the ALJ found that Plaintiff suffered from

11   gastroesophageal reflux disease, headaches, firbromyalgia,

12   degenerative disc disease, spinal stenosis, and major depression, all

13   medically-determinable impairments.  (AR 328.)  The ALJ further

14   determined that these impairments were "severe" within the meaning of

15   the regulations.  (AR 328.)

16       At step three, however, the ALJ noted that Plaintiff had only

17   "mild restriction of activities of daily living; mild difficulties in

18   maintaining social functioning; mild deficiencies in maintaining

19   concentration, persistence or pace; and no episodes or decompensation

20   of extended duration" during the relevant period.  (AR 328.)  Thus,

21   the ALJ concluded that Plaintiff's impairments, although severe, did

22   not meet or equal a Listing.  (*See* AR 328.)

23       At step four, the ALJ assessed Plaintiff's residual functional

24   capacity.  (AR 328.)  After surveying the evidence and offering

25   several reasons why Plaintiff's testimony about her subjective

26   complaints was not credible (*see* AR 328-30), the ALJ determined that

27   Plaintiff could perform a significant (but not full) range of light

28   work:

1        [Plaintiff] retains the exertional capacity for light work.

2        Specifically, she can lift and/or carry a maximum of 20

3        pounds occasionally and 10 pounds frequently.  She is able

4        to sit, stand, or walk for 6 hours out of an 8-hour workday,

5        changing position at normal workday breaks.  She is also

6        precluded from climbing ladders or scaffolds, and work

7        involving unprotected heights, dangerous or fast-moving

8        machinery, and driving automotive equipment.

9  (*See* AR 330.)  The ALJ accepted the vocational expert's testimony that

10 a person with these limitations could not perform Plaintiff's past

11 relevant work.  (*See* AR 330-31.)  Accordingly, the ALJ proceeded to

12 the fifth step.

13     At step five, the ALJ relied upon the vocational expert's opinion

14 that a person with Plaintiff's limitations could perform the jobs of

15 motel housekeeper, electrical assembler, and small products assembler-

16 -an opinion that was not inconsistent with the Medical-Vocational

17 Guidelines, or "Grids."  (*See* AR 331.)  On that basis, the ALJ

18 concluded that Plaintiff was not disabled at any time during the

19 relevant period.  (AR 332.)

20     Plaintiff once more timely sought review of the ALJ's decision.

21 (AR 319.)  The Appeals Council denied review, however, and the

22 decision of the ALJ became the final decision of the Agency.  On

23 August 31, 2004, Plaintiff filed a Complaint in this Court.  On July

24 14, 2005, the parties filed a Joint Stipulation ("Joint Stip.")

25 setting forth the contested issues.

26

27

28

III.

STANDARD OF REVIEW

"Disability" under the applicable statute is defined as the inability to perform any substantial gainful activity because of "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Court may overturn an ALJ's decision that a claimant is not disabled only if the decision is not supported by substantial evidence or is based on legal error. *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

Substantial evidence "'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).) It is "more than a mere scintilla but less than a preponderance," *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

"The Court must uphold the ALJ's conclusion even if the evidence in the record is susceptible to more than one rational interpretation." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Indeed, if the record evidence can reasonably support either affirming or reversing the Agency's decision, this Court must not substitute its judgment for that of the ALJ. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the ALJ committed error but the error was harmless, reversal is not required. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2003)(applying the harmless error standard).

8

1                                    IV.

2                                DISCUSSION

3        Plaintiff has two quarrels with the ALJ's decision.  First, she

4   argues that the ALJ erred by failing to "compl[y] with the Appeal's

5   Council's order requiring her to consider the diagnosis of major

6   depression and Global Assessment of Functioning score of 50."[3]  (*See*

7   Joint Stip. at 3-4.)  Second, she insists that the ALJ gave short

8   shrift to the opinion of her treating psychiatrist.  (*See* Joint Stip.

9   at 5-7.)

10       As briefed, both of Plaintiff's substantive arguments challenge

11  the ALJ's analysis of the medical evidence of her mental impairments.

12  (*See* Joint Stip. at 3-4, 5-7.)  Plaintiff does not, however, dispute

13  the ALJ's adverse credibility determination.  (*See* Joint Stip. at 3-7;

14  *see also* AR 328-29.)  What the ALJ had to say about Plaintiff's

15  credibility is worth quoting at length:

16       [Plaintiff's] hearing testimony as to her daily activities

17       reflects inconsistencies.  For example, she testified [at

18       the third hearing in February 2004] that she has not done

19       any laundry, washed dishes or made the bed for the last five

20       years, but she indicated in testimony [at the second hearing

21       in April 2002] that she did all of those things.  Her

22       current testimony otherwise described a wide range of daily

23       activities.  She lives in a house with her 5 children, aged

24       20, 18, 18, 15, and 11.  She supervises the children and

25

26       [3]   The Global Assessment of Functioning ("GAF") scale is used by
27  clinicians to report an individual's overall level of functioning.
    *See American Psychiatric Association, Diagnostic & Statistical Manual*
28  *of Mental Disorders* (Text Revision 4th ed. 2000) ("DSM-IV") at 32.

                                     9

makes sure they do their chores.  She has 1 dog and 2 cats
and she plays with [them] daily.  She goes to the park to
watch the children play soccer, and she is active in her
church.  She sees her ex-spouse every other week.  In prior
written statements, she has also indicated that she
vacuumed, used public transportation or drove her car, went
out to dinner and to the park, went grocery shopping, took
her children to school or out to eat, paid bills, prepared
her own meals, handled her own grooming and hygiene without
assistance, watched television, including CNN and the
History Channel, and read the newspaper.  This level of
activity is not consistent with the degree of pain and
depression alleged by [Plaintiff].  [¶]  [Plaintiff's]
overall credibility is undermined by her inconsistent and
contradictory statements of record, such as her conflicting
testimony regarding her daily activities.  In addition, she
told the intake counselor at Victor Valley Counseling Center
that she stopped working in 1998 because she was unable to
concentrate, but told an examining psychiatrist that she
stopped working because of low back pain resulting from a
slip and fall accident.  She has variously reported her
education as 6th grade only, a GED, Associates of Arts
degree, and high school with three years of college.
Moreover, objective psychological testing indicated that she
was grossly exaggerating her symptoms and attempting to
simulate impairment, and the examining psychologist noted
that [Plaintiff] did not put forward full effort during the

1    evaluation.  It is also noted that [Plaintiff's] work

2    history has been quite minimal and sporadic, which further

3    leads one to question her motivation to work.

4    (*See* AR 328-29 (citations to record omitted).)  All of the examples

5    the ALJ offered were legally-sufficient reasons to support the

6    conclusion that Plaintiff's testimony was not credible.[4]  Before

7    reaching the merits of Plaintiff's criticisms of the ALJ's handling of

8    the medical evidence, then, the Court first must address the ALJ's

9    finding that Plaintiff was not credible and the implications of

10   Plaintiff's decision not to challenge that finding here.

11       It is axiomatic that "[c]redibility determinations are the

12   province of the ALJ."  *See Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir.

13   1989).  For that fundamental reason, this Court will not second-guess

14   an unchallenged credibility finding.  *See Solomon v. Secretary of*

15   *Health and Human Services*, No. 91-CV-77171 DT, 1992 WL 478586, at *2

16   (E.D. Mich. Aug. 13, 1992)("The Plaintiff has not challenged the ALJ's

17   determination of her credibility, and the Court accepts it as

18   accurate.").

19   _____

20       [4]  *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995)(noting
     that the ALJ may consider "inconsistencies in testimony" when making
21   credibility determinations); *see also Light v. Social Sec. Admin.*, 119
     F.3d 789, 792 (9th Cir. 1997)(noting that the ALJ's rejection of a
22   claimant's credibility could be based upon various factors, including
     "inconsistencies either in his testimony or between his testimony and
23   his conduct," including his "daily activities"); *Thomas v. Barnhart*,
     278 F.3d 947, 959 (9th Cir. 2002)(noting that the ALJ properly found
24   that the claimant's "extremely poor work history" negatively affected
     her credibility regarding her inability to work); *Tonapetyan v.*
25   *Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001)(upholding adverse
     credibility finding where the ALJ cited the claimant's "lack of
26   cooperation at the hearing, her presentation at the hearing, her
     tendency to exaggerate, her inconsistent statements, and her lack of
27   cooperation during consultative examinations").

28

Two important implications stem from this result.  First, where a claimant fails to challenge the ALJ's adverse credibility finding, she cannot "show that the ALJ erred in her decision not to credit [the treating physician's] assessment, which was based in large part on [the claimant's] statements." *See Siska v. Barnhart*, No. C 00-4788 MMC, 2002 WL 31750220, at *3 (N.D. Cal. Dec. 4, 2002).  Second, a claimant's failure to dispute the ALJ's finding that her testimony was incredible means that, to the extent that *any* of her arguments rely upon citations to her own testimony or statements in the record, that argument "carries no weight." *See Stanistreet v. Chater*, 21 F.Supp.2d 1129, 1135 n.15 (C.D. Cal. 1995); *accord West v. Barnhart*, 254 F.Supp.2d 1216, 1227 (D. Kan. 2003)(holding that, where the "ALJ determined plaintiff's testimony is not credible and plaintiff does not challenge that finding, plaintiff's testimony that her sitting capacity is severely limited is not sufficient to negate the ALJ's [residual functional capacity] finding.").

With these implications in mind, each of Plaintiff's specific challenges to the ALJ's handling of the medical evidence of her mental impairments will be addressed separately below.  As will be explained at length, however, the Court concludes that substantial evidence supports the ALJ's finding of non-disability.

A.   The Appeals Council's Remand Instructions

Plaintiff contends that the ALJ did not follow the remand instructions handed down to her by the Appeals Council. (*See* Joint Stip. at 3-4.)  In particular, Plaintiff complains that the ALJ ignored her treating physician's GAF assessment of 50. (*See* Joint Stip. at 3.)  This contention is rejected because it is based on a misreading of the record.

The controlling federal regulations require ALJs to follow the instructions they receive from the Council on remand.  See 20 C.F.R. § 404.977(b)("The [ALJ] *shall* take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order.")(emphasis added).  At least one district court in our circuit has held that, when an ALJ disobeys the Council's instructions, her decision is subject to reversal.  *See Stewart v. Sullivan*, 810 F. Supp. 1102, 1106 (D. Haw. 1993).  Other courts outside our circuit agree.[5]

In Plaintiff's case, when the Court issued its second remand order on June 17, 2003, its instructions included the directive to "discuss the opinions of all treating and examining physicians and indicate the weight given to each opinion" and required the ALJ to "give specific reasons" for rejecting any treating physician's opinion.  (*See* AR 638.)  The Appeals Council's remand instructions were somewhat more specific on this point:

> [T]he treating psychiatrist diagnosed [Plaintiff] with major
> depression, recurrent, moderate with a GAF of 50.  Although
> the [ALJ] stated that [some of] the treating physician's

---

[5]   *See*, *e.g.*, *Jones v. Barnhart*, 372 F. Supp.2d. 989 (S.D. Tex. 2005)(remanding where "the ALJ failed to comply with the Appeals Council's order," which had instructed him to take additional, specific evidence about the claimant's residual functional capacity); *Hayes v. Barnhart*, No. C04-3023 (MWB), 2005 WL 263923, at *32 (N.D. Iowa Jan. 19, 2005)(remanding where "the ALJ failed to comply with the instructions of the Appeals Council on remand"); *Almonte v. Apfel*, No. 96 CIV 1119 (JGK), 1998 WL 150996, at *7 (S.D.N.Y. March 31, 1998)(reversing and remanding for further proceedings when the ALJ failed to comply "with the detailed instructions that the ALJ was directed to follow by the Appeals Council").

1    notes were illegible,[6] [s]he did not state what weight was

2    given to this treating source's comments.   Further

3    development is needed to resolve these issues.

4   (AR 641.)   On remand, the ALJ complied with this portion of the

5   Appeals Council's instructions by making the following findings:

6        The undersigned also considered the records from Victor

7        Valley Counseling Center reflecting a [GAF] score of 50 as

8        of March 1999 and January 2000.   A GAF of 50 is indicative

9        of serious symptoms or any serious impairment in social,

10       occupational, or school functioning, per the [DSM-IV].

11       However, the noted GAF scores were prepared by family

12       counselors, who are not an acceptable medical source under

13       the Regulations.   Moreover, there is no indication that a

14       psychiatrist or clinical psychologist reviewed or otherwise

15       endorsed those findings.   The findings also conflict with

16       the assessment of consultative psychiatrist Lawrence

17       Ogbechie, M.D., who evaluated [Plaintiff] on May 8, 1999 and

18       gave her a better GAF score of 60, indicative of moderate,

19       rather than serious, symptoms or impairment.

20   (See AR 330 (citations to record omitted).)   Accordingly, the ALJ gave

21   the GAF scores of 50 "little weight."   (See AR 330.)   The Court

22   concludes that the foregoing explanation satisfied the spirit of the

23   Appeals Council's remand instructions, was supported by substantial

24   evidence, and was correct as a matter of law.

25

26   _____

27       [6]   What ALJ Hesse actually noted in her second decision was that
     the treating physician's "[h]and-written medication notes [we]re
28   illegible."   (See AR 14.)

14

The backbone of Plaintiff's argument is the assumption that her treating physician made these GAF assessments. (*See* Joint Stip. at 3-4.) This assumption is, however, totally unsupported by the record. Neither Plaintiff's treating physician, Dr. Krishna Murthy, M.D., nor any other *treating source* ever opined that Plaintiff had a GAF of 50. Instead, a review of the record reveals that, on March 2, 1999, Ms. Nancy Hirst, M.A., an intern at the San Bernardino County Department of Behavioral Health, assessed Plaintiff's GAF score at 50. (*See* AR 234.) On January 24, 2000, one "B. Schwartzer, M.F.T.," also gave Plaintiff a GAF score of 50. (*See* AR 233.) The record does not reflect that either Ms. Hirst nor B. Schwartzer is a licensed or certified psychologist. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a) (listing acceptable medical sources). Nor does the record clearly show that either was acting as the "agent" of any doctor when they performed their respective GAF assessments; indeed, no physician's signature appears on either assessment. (*See* AR 233-34.) At most, the Hirst and Schwartzer reports were nothing more than the opinions of "other sources." *See* 20 C.F.R. §§ 404.1513(d), 416.913(d). As such, these GAF assessments properly were afforded no inherent deference. *See Bunnell v. Sullivan*, 912 F.2d 1149, 1152 (9th Cir. 1990), *rev'd en banc on other grounds*, 947 F.2d 341 (9th Cir. 1991).[7]

---

[7] Although the ALJ was required to follow the Appeals Council's remand instructions, she was not bound by the Appeals Council's inaccurate factual observation that the "treating psychiatrist diagnosed [Plaintiff] with major depression, recurrent, moderate with a GAF of 50." (*See* AR 641.) At least one district court in our circuit has held that the ALJ commits reversible error if she adopts factual findings that are unsupported by substantial evidence, even if those findings were set forth in the Appeals Council's remand instructions. *See Pine v. Shalala*, No. C-93-2959 MHP, 1994 WL 744332, at **3-5 (N.D. Cal. Sept. 20, 1994).

1    This conclusion is bolstered by the fact that the Hirst and

2    Schwartzer scores were, as the ALJ noted, contradicted by an examining

3    *physician*--who assigned Plaintiff a GAF score of 60 shortly after the

4    Hirst assessment, and a few months before the Schwartzer evaluation.

5    (*See* AR 330, 539.)   Pursuant to the regulations, the ALJ was entitled

6    to give greater deference to the opinion of an examining *physician*

7    than to the assessment of an "other source."   *See Gomez v. Chater*, 74

8    F.3d 967, 970-71 (9th Cir. 1996)(noting that the regulations do not

9    specify guidelines for weighing opinions from other sources, thereby

10   permitting the Agency to give opinions from other sources less weight

11   than that given opinions from acceptable medical sources); *see also*

12   *Jackson v. Barnhart*, No. C 02-02498-JSW, 2005 WL 2008037, at *7 (N.D.

13   Cal. Aug. 12, 2005)(holding that an ALJ permissibly afforded a nurse's

14   opinion less weight than the contradictory opinion of an examining

15   physician).

16   Finally, even if the Court assumes that one of Plaintiff's

17   treating physicians agreed with the Hirst and Schwartzer GAF

18   assessments--and, as explained above, nothing in the record indicates

19   that such an assumption is warranted--the ALJ's failure to credit

20   these GAF scores would not require reversal.   There is no "Ninth

21   Circuit authority[] that a GAF score of 50, by itself, requires a

22   finding of disability."   *See Purvis v. Commissioner of Social Sec.*

23   *Admin.*, 57 F. Supp. 2d 1088, 1093 (D. Or. 1999).   Aside from the fact

24   that an examining physician contradicted these GAF assessments, (*see*

25   AR 539), it is noteworthy that no doctor opined that Plaintiff was

26   unable to work.   Even if assessed by a treating physician, a GAF score

27

28

                                    16

1   of 50 cannot be read as an opinion that the claimant is unable to

2   work.  *See Clemens v. Massanari*, No. CV 00-6204-KI, 2001 WL 34043764,

3   at *10 (D. Or. May 17, 2001).

4        In sum, the ALJ's handling of the Hirst and Schwartzer GAF scores

5   did not amount to an abdication of her duties on remand.  A review of

6   the record confirms that these scores did not have the imprimatur of

7   any physician, and that they were contradicted by at least one

8   acceptable medical source.  Because the ALJ did not err, the Court

9   rejects Plaintiff's first claim.

10  B.   The Treating Physician Evidence

11       Plaintiff also complains that the ALJ rejected the opinion of Dr.

12  Murthy--her treating psychiatrist--without articulating specific and

13  legitimate reasons.  (*See* AR 5-7.)  Upon review of the record, the

14  Court concludes that the ALJ gave this treating physician's opinion

15  the weight it deserved.

16       A treating physician's opinion on the nature and severity of an

17  impairment will be given controlling weight if it is "well-supported

18  by medically acceptable clinical and laboratory diagnostic techniques

19  and is not inconsistent with the other substantial evidence in [the]

20  case record."  20 C.F.R. § 416.927(d)(2).  The ALJ must offer specific

21  and legitimate reasons to reject the opinions of treating physicians.

22  *See Holohan v. Massanari*, 246 F.3d 1195, 1202-03 (9th Cir. 2001); *see*

23  *also Lester* v. Chater, 81 F.3d 821, 830 (9th Cir. 1996)(same).

24       In her decision, the ALJ summarized Dr. Murthy's diagnosis and

25  conclusions:

26       [Plaintiff] continues to see her psychiatrist, Dr. Murthy,

27       once a month for a medication visit.  [She] is compliant

28       with her appointments and medication, and Dr. Murthy reports

17

1 that she has no adverse side effects.  These records reflect

2 [her] ongoing subjective complaints of depression without

3 suicidal ideation, and feelings of hopelessness,

4 helplessness, and worthlessness, problems with attention,

5 concentration and memory, and difficulty coping with

6 problems with her children and ex-husband.

7 (AR 327.)  The ALJ then stated that Dr. Murthy's opinion was not fully

8 supported by the record, and explained why:

9 [T]here is an absence of objective findings, such as those

10 derived from a mental status examination or psychological

11 testing.  It is noted that [Plaintiff] has been taking the

12 same medication, Paxil, at the same dosage, 40 mg once a

13 day, for the past 4 years since March 2000.  This suggests

14 that [her] response to her medication and treatment is

15 adequate in managing her symptoms.

16 (*See* AR 327.)  By way of contrast, the ALJ noted that objective

17 psychological testing performed by an examining psychologist had

18 indicated that Plaintiff was malingering.  (*See* AR 329.)  On these

19 facts, the Court concludes that--even if the ALJ had rejected Dr.

20 Murthy's opinion outright[8]--her handling of this evidence was proper.

21

22

23 [8]  It is arguable that, contrary to Plaintiff's suggestion that
the ALJ "rejected" her treating physician's opinion (*see* Joint Stip.
24 at 7), the ALJ did no more than discount that opinion.  This obscurity
is a tell-tale sign that the ALJ deviated from the Court's and the
25 Appeals Council's remand instructions: both of which explicitly
required her to "indicate the weight given to each opinion" offered by
26 the treating and examining physicians.  (*See* AR 638, 641.)  Because
the ALJ's analysis withstands scrutiny even if she did reject (or give
27 *no* weight whatsoever to) Dr. Murthy's opinion, however, any error is
harmless.  *See Batson*, 359 F.3d at 1197.
28

1    Before launching into an analysis of Plaintiff's claim, it bears
2    emphasis that an ALJ is not *required* to give controlling weight to the
3    opinion of a treating physician.  *See Batson*, 359 F.3d at 1194-95.
4    "Although a treating physician's opinion generally is afforded the
5    greatest weight in disability cases, it is not binding on an ALJ with
6    respect to the existence of an impairment or the ultimate
7    determination of disability."  *Tonapetyan*, 242 F.3d at 1149.   "The ALJ
8    may disregard the treating physician's opinion whether or not that
9    opinion is contradicted," and "need not accept a treating physician's
10   opinion . . . with little in the way of clinical findings . . . ."
11   *See Magallanes*, 881 F.2d at 751; *see also Johnson v. Shalala*, 60 F.3d
12   1428, 1432 (9th Cir. 1995)(noting that the ALJ need not accept a
13   treating physician's opinion that is brief, conclusory, and
14   unsubstantiated by objective medical evidence).   Measured against
15   these standards, the ALJ's rejection of Dr. Murthy's opinion was
16   clearly defensible.

17       The ALJ accurately observed that Dr. Murthy's opinion relied only
18   on his conversations with Plaintiff--*i.e.*, her "subjective
19   complaints"--rather than testing.  (*See* AR 327; *see also* AR 602-24.)
20   As noted previously, Plaintiff has not challenged the ALJ's
21   determination that her subjective complaints, including her claimed
22   mental limitations, were not credible.  (*See* AR 328-29; *see also* Joint
23   Stip. at 3-7.)   The ALJ's adverse credibility finding was supported by
24   the opinion of Dr. Kim Goldman, an examining physician who
25   administered a complete psychological evaluation to Plaintiff,
26   including the WAIS-III, Bender Gestalt-II, Trails A and B, Rey 25 Item
27   Memory Test-II, and MMPI-2 examinations.  (*See* AR 664.)  On the basis
28   of these objective tests, Dr. Goldman perceived "gross exaggeration of

symptoms of pathology" and concluded that Plaintiff "may be attempting to simulate cognitive impairment." (*See* AR 667.)  This evidence of malingering, which the ALJ specifically noted in her adverse credibility determination (*see* AR 329), permitted her to reject Dr. Murthy's opinion: which was based entirely upon Plaintiff's incredible subjective complaints.  *See Tonapetyan*, 242 F.3d at 1149; *see also Morgan*, 169 F.3d at 600-02; *Magallanes*, 881 F.2d at 751.

Even if the proper weight of the treating psychiatrist's opinion were analytically susceptible of isolation from the issue of Plaintiff's credibility--and because of the largely subjective nature of her claimed mental impairment, it is not--the fact that Dr. Goldman's opinions were supported by a battery of objective tests meant that the absence of similar objective support for Dr. Murthy's conclusions was a legitimate ground for rejecting his opinion.  This conclusion is reinforced by the Ninth Circuit's observation in *Andrews v. Shalala*, 53 F.3d 1035 (9th Cir. 1995).  There, the court explained:

> Where the opinion of the claimant's treating physician is
> contradicted, and the opinion of a nontreating source is
> based on independent clinical findings that differ from
> those of the treating physician, the opinion of the
> nontreating source may itself be substantial evidence; it is
> then solely the province of the ALJ to resolve the conflict.

*Id.* at 1041.  If, as *Andrews* holds, a treating physician's opinion may be rejected because it rests on *different* clinical findings than those relied upon by an examining physician who reaches a contrary conclusion, *see id.*, then *a fortiori* a treating physician's opinion may be rejected if it is based on *no* clinical findings at all and is contradicted by that of an examining physician who *does* rely on

20

objective findings. *See Crawford v. Massanari*, No. C 00-04244-VRW, 2002 WL 43250, at *2 (N.D. Cal. Jan. 2, 2002)(holding that an ALJ did not err in relying upon the opinion of an examining psychologist who had "performed a clinical interview and administered several objective psychological tests," and affirming the ALJ's rejection of the contrary opinion of a treating psychologist whose opinions were "based solely on [the claimant's] subjective complaints"). That is what the ALJ did here. (*See* AR 327.)

In the face of the foregoing authorities, Plaintiff insists that "requiring the treating psychiatrist to provide objective findings is clearly material error." (*See* Joint Stip. at 7.) As *Andrews* reflects, this argument paints the current state of the law with too broad a brush.[9] This Court recently has explained the circumstances in which the ALJ may rely on the absence of objective findings to reject the opinions of a mental health professional who has treated the claimant:

---

[9] Although the Ninth Circuit has reversed decisions where the ALJ relied upon the lack of objective findings to support a psychologist's or psychiatrist's opinions, it has done so where the ALJ either found the claimant's testimony to be credible, or where the ALJ's adverse credibility determination was challenged by the claimant and was found to be unsupported by substantial evidence. *See Regennitter v. Commissioner*, 166 F.3d 1294, 1298-99 (9th Cir. 1999) (holding that, if the ALJ's adverse credibility determination was unsupported by the evidence, then his rejection of a psychologist's opinion derived from the claimant's subjective complaints could not be justified on the ground that it was unsupported by objective evidence); *see also Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985)(reversing a denial of benefits where the ALJ found the claimant credible and rejecting the government's contention that the opinion of the treating psychiatrist could be rejected because it "fail[ed] to set out 'supporting objective findings'"). As explained above, Plaintiff has not challenged the ALJ's determination that her complaints were incredible.

21

[W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnoses and observations of professionals trained in the field of psychopathology.  The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, *unless there are other reasons to question the diagnostic technique*.

*See Sanchez v. Apfel*, 85 F. Supp.2d 986, 992 (C.D. Cal. 2000)(emphasis added).  Here, there were "other reasons" to doubt the validity of Dr. Murthy's diagnoses--which relied upon Plaintiff's otherwise incredible subjective complaints and which were inconsistent with the conservative treatment that this doctor prescribed--and the ALJ duly noted those reasons.  (*See* AR 327.)  Plaintiff does not challenge either of these other reasons, and the Court concludes that they enjoy substantial evidentiary support.  (*See* AR 602-26.)  In these circumstances, the ALJ properly could reject Dr. Murthy's untested conclusions.  *See Dees v. Apfel*, No. C 00-1250-VRW, 2001 WL 637417, at *8 (N.D. Cal. May 23, 2001)(holding that a treating psychiatrist's diagnosis, which "used no objective tests to measure [the claimant's] mental health" and was "based in part on [the claimant's] own accounts of his symptoms and limitations," could be rejected where the ALJ determined the claimant's subjective complaints to be incredible).

In the final analysis, the Court concludes that the ALJ offered specific and legitimate reasons for rejecting the opinion of Plaintiff's treating psychiatrist: which opinion relied upon Plaintiff's incredible subjective symptom complaints, lacked the

22

support of any objective testing, and was contradicted by the battery

of tests run by the examining psychologist.  *See Holohan*, 246 F.3d at

1202-03.  Accordingly, reversal is not warranted.

IV.

CONCLUSION

For the reasons set forth above, this Court finds that the

Agency's findings were supported by substantial evidence and were free

from material legal error.  Accordingly, the Court AFFIRMS the

decision of the Agency.

IT IS SO ORDERED.

DATED:    November  18  , 2005.


                              ___/s/_____
                              PATRICK J. WALSH
                              UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\SPAULDING, P 1055\Memo Opinion.wpd